**Appeal No. 2022-1514**

---

**IN THE**

# UNITED STATES COURT OF APPEALS

**FOR THE FEDERAL CIRCUIT**

---

UPL NA INC.,

*Appellant*,

v.

TIDE INTERNATIONAL (USA), INC.,

*Appellee*.

**Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board, IPR2020-01113**

---

REPLY BRIEF OF APPELLANT UPL NA INC.

---

Parmanand K. Sharma
Rajeev Gupta
Joshua L. Goldberg
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

Maximilienne Giannelli
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
1875 Explorer Street
Suite 800
Reston, VA 20190-6023
(571) 203-2700

September 19, 2022

*Attorneys for Appellant UPL NA Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2022-1514

**Short Case Caption** UPL NA Inc. v. Tide International (USA), Inc.

**Filing Party/Entity** UPL NA Inc.

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/19/2022

Signature: /s/ Maximilienne Giannelli

Name: Maximilienne Giannelli

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| UPL NA Inc. | | UPL Europe Ltd. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| UPL NA Inc. v. Tide International (USA), Inc. et al., Case No. 8:19-cv-1201-RSWL-KS (C.D. Cal. 2019) | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**


I. Introduction ........................................ 1

II. The Board's Finding that a POSITA Would Have Been Motivated to Prepare a Granule Containing 85-98% Acephate without a Binding Agent Is Legally and Factually Erroneous ........................................ 3

A. Tide Invites Legal Error by Focusing on Mere *Disclosure*, rather than *Motivation* to Combine ........................................ 4

B. Tide's Attempt to Reframe the Issue as Motivation "to Use a Filler" Should Be Rejected. ........................................ 8

C. Tide Forfeited Its Untimely and Irrelevant Arguments Based on the '685 Patent's Disclosures ........................................ 10

III. The Claimed "Fillers" Should Not Include Unrecited "Binding Agents" ........................................ 11

A. UPL NA Consistently Argued that the Claimed "Fillers" Are Not Binding Agents, Precluding a Finding of Waiver or Forfeiture ........................................ 12

B. The Board Applied a Flawed Construction of "Fillers" in Its Final Written Decision ........................................ 14

C. Regardless of the Meaning of "Inert," "Fillers" Are Not "Binding Agents" in the Context of the '685 Patent. ........................................ 16

1. Tide's Arguments Regarding the Meaning of "Inert" Distract from the Real Issue ........................................ 19

2. Tide Mischaracterizes UPL NA's Arguments and the '685 Patent to Dispute that the Claimed "Fillers" Are Non-Functional ........................................ 21

IV. Conclusion ........................................ 24

# TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017) ....................................................6, 7

*Carrum Techs., LLC v. Unified Patents, LLC*,
2020-2204, 2021 WL 3574209 (Fed. Cir. 2021)..........................................14, 15

*Chemours Co. FC, LLC v. Daikin Indus., Ltd.*,
4 F.4th 1370 (Fed. Cir. 2021) ....................................................7

*In re Cuozzo Speed Techs., LLC*,
793 F.3d 1297 (Fed. Cir. 2015) (Newman, J., dissenting from denial of petition for rehearing *en banc*) ..........................................24

*In re Google Tech. Holdings*,
980 F.3d 858 (Fed. Cir. 2020) ....................................................10

*Harris Corp. v. Ericsson Inc.*,
417 F.3d 1241 (Fed. Cir. 2005) ....................................................13

*KSR Int'l Co. v. Teleflex Inc.*,
127 S. Ct. 1727 (2007)....................................................4, 5

*Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*,
677 F.3d 1361 (Fed. Cir. 2012) ....................................................17

*OSI Pharms., LLC v. Apotex Inc.*,
939 F.3d 1375 (Fed. Cir. 2019) ....................................................3, 6

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (*en banc*)..........................................24

*Verify Smart Corp. v. Askeladden, L.L.C.*,
824 F. App'x 1015 (Fed. Cir. 2020)..................................................13

## I. Introduction

The Board's Final Written Decision rests on flawed determinations (incorrectly advanced by Tide) that the claimed "fillers to make 100%" encompass well-known, common binding agents and that even if "fillers" are not "binding agents," a person of ordinary skill in the art ("POSITA") would have been motivated to prepare a granule containing 85-98% acephate without a binding agent. The Board's application of the term "fillers" is an implicit construction that conflicts with the specification and claims of U.S. Patent No. 7,473,685, and the Board's purported motivation to combine the prior art improperly focuses on disparate disclosures in the prior art, rather than the rationale of a POSITA to prepare the granule of claim 1, without hindsight.

On the claim construction issue, Tide's arguments (and the Board's Final Written Decision) would convert the term "fillers to make 100%" into a catch-all term that includes any number of non-recited ingredients in claim 1, thereby rendering the "consisting of" language in the claim meaningless. In effect, Tide and the Board would read the word "fillers" out of claim 1 and require simply "any excipient added to make 100%." But this argument cannot be squared with the claim language (i.e., "consisting of") and the public notice function of that language.

In an attempt to sidestep this otherwise straightforward issue, Tide argues that UPL NA waived or forfeited its argument that claim 1 of the '685 patent excludes

bindings agents—an argument that UPL NA consistently and repeatedly presented below. Indeed, the Board specifically addressed UPL NA's understanding that the term "fillers" does not include binding agents in its Final Written Decision, confirming the argument was presented below.

Seeking to further muddy this issue, Tide argues that if "inert" means anything other than the active ingredient (e.g., anything other than acephate), that somehow establishes that the claimed fillers include binding agents. But regardless of the meaning of "inert," the "fillers" of independent claim 1 should not be construed to encompass the binding agents recited in claim 7 and specifically omitted and not recited in claim 1.

As to the obviousness analysis, Tide, and in turn the Board, focus on whether the prior art generally ***discloses*** a granule without a binder, without addressing whether the prior art would have ***motivated*** a POSITA to prepare a granule containing 85-98% acephate without a binder. The issue is not whether the prior art discloses fillers with no binding properties, in general. It is whether a POSITA would have a rationale for selecting a (non-binding) filler instead of a binding agent, in a high concentration acephate formulation, particularly where the prior art taught that binding agents were "required" and important for worker safety in such applications.

This Court should reject the flawed construction and erroneous obviousness analysis advanced by Tide and adopted by the Board.

## II. The Board's Finding that a POSITA Would Have Been Motivated to Prepare a Granule Containing 85-98% Acephate without a Binding Agent Is Legally and Factually Erroneous

The Board's finding that a POSITA would have been motivated to prepare the granule of claim 1—which excludes a binding agent—is not supported by substantial evidence. Blue Br., 43-47. "The Supreme Court 'has stressed the importance of not simply rubberstamping agency factfinding . . . . The [Administrative Procedure Act] requires meaningful review; and its enactment meant stricter judicial review of agency factfinding than Congress believed some courts had previously conducted." *OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375, 1382 (Fed. Cir. 2019).

Here, the Board erred as a matter of law by focusing on mere disclosure of non-binding fillers in the prior art, rather than articulating a motivation to combine the prior art to arrive at the granule of claim 1 of the '685 patent. Blue Br., 40-42. Tide again invites the same legal error, focusing solely on disparate disclosures and failing to explain why a POSITA would prepare a granule containing 85-98% acephate without a binding agent. Red Br., 20-23.

In view of the art of record, a POSITA would have had a strong motivation to prepare granules of high acephate concentration with a binding agent, and no reason to prepare granules without one. Blue Br., 43-47. Rather than address this reality, Tide seeks to reframe the issue as whether a POSITA would have been motivated to include a non-binding filler. This reframing, however, does not address whether a

POSITA would have been motivated to exclude a binding agent, which is the actual issue on appeal.

Tide also seeks to distract this Court by advancing arguments about the disclosures of the ’685 patent supporting a POSITA’s reasonable expectation of success. Tide forfeited this argument by not raising it below, and regardless of forfeiture, this untimely argument addresses an issue not on appeal (reasonable expectation of success) and, in any event, mischaracterizes the ’685 patent.

### A. Tide Invites Legal Error by Focusing on Mere *Disclosure*, rather than *Motivation* to Combine

At Tide’s behest, the Board erred by simply looking to whether (non-binding) fillers were disclosed in the prior art, rather than identifying a reason to combine the prior art’s distinct disclosures to arrive at the granule of claim 1 of the ’685 patent. *See* Blue Br., 40-42. Tide now invites this Court to adopt the same error, arguing that Misselbrook’s mere disclosure of “any” water-soluble filler, including a filler without binding properties, should end the inquiry. Red Br. 16-17, 20-23. This argument conflicts with black-letter patent law, which establishes that “a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art.” *KSR Int’l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1741 (2007). In other words, it is not enough to locate the elements of a claim in the prior art. Instead, the Supreme Court has recognized that “it can be important to identify a reason that would have prompted a person of

ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *Id.*

Regarding what Misselbrook "discloses," Tide argues that "Misselbrook discloses a high concentration acephate granule with no binding agent." Red Br., 20. Yet to find a description in Misselbrook that would encompass such a granule, one would need to resort to Misselbrook's reference to an embodiment where "the formulation contains about 0.1 to 90% by weight of the water soluble pesticide." Appx816, 3:58-60. This broad genus does not even specify that the formulation is a granule, as opposed to a wettable powder or a "monolith" (Appx816, 3:26-27), much less identify any other ingredient or amount recited in claim 1 of the '685 patent. Notably, Misselbrook's other embodiments would all specifically exclude a granule containing 85-98% acephate. *E.g.*, Appx816 (3:35-4:32) (disclosing embodiments that require, e.g., at least 30-99.9%, 40-99.9%, 40-99%, 60-99%, and 86% water-soluble filler, often limited to lactose, in combination with a water-soluble pesticide, often required to be emamectin benzoate). Thus, to say that Misselbrook "discloses" a high concentration acephate granule does not paint an accurate picture of Misselbrook.

In addition to Misselbrook's own deficiencies, the Board's consideration of the purported reason to combine the prior art to arrive at claim 1 was conclusory at best, noting simply that Misselbrook mentions a class of non-binding fillers as

"appropriate" for water-soluble granules. *See* Red Br., 21; Appx29. Perhaps in a vacuum—without consideration of the teachings in the prior art about the importance of binding agents in granules—this disclosure may potentially suffice. But the law requires consideration of all the pertinent teachings of the prior art, and purported reasons to combine "cannot be viewed in a vacuum apart from evidence suggesting reasons not to combine." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1363 (Fed. Cir. 2017). Rather, "[t]he substantial evidence standard asks 'whether a reasonable fact finder could have arrived at the agency's decision,' and 'involves examination of the record as a whole, taking into account evidence that both justifies and detracts from an agency's decision.'" *OSI Pharms.*, 939 F.3d at 1381.

The analysis must thus focus on whether a POSITA would have had a reason to prepare a granule containing 85-98% acephate without a binding agent, not whether fillers were generally disclosed in the prior art. Blue Br., 40-47. The answer to that former question is a resounding no, particularly where the prior art teaches, e.g.:

- A binding agent is "required" in acephate granules. Appx1684 (Chan, 2:17-22) ("Concentration of active ingredient [acephate] is further limited by the ability of binding agents to form agglomerates, i.e., a minimum amount of any particular ***binding agent is required*** in order to meet physical properties of attrition resistance, crush strength and bulk density." (emphasis added)).

- A binding agent is "very important for safety reasons" because it reduces dust. Appx1286-1287 (Knowles) (Adding "***large quantities of binder*** in order to tie down [a] small fraction of particles seems excessive but it is, of course, ***very important*** for safety reasons." (emphases added)).

- The only working examples of granules containing 85-98% acephate in the cited art also include one or more binding agents, dextrose and/or lactose. Appx858-859 (JP '902, [0018], [0024]).

- Misselbrook's preferred purported "fillers" are all common binding agents, e.g., lactose, sucrose, and glucose. Appx96 (Petition) ("A POSITA would know in 2001 that common binding agents include sugars, starches, starch blends, and their derivatives because they hold particles together using their viscosity."); Appx435 (Oral Hr'g Tr., 15:19-22 (Tide's counsel: "Misselbrook labels those sugars as fillers. It's undisputed in this case that a person of ordinary skill in the art would recognize that those sugars were commonly used as binding agents.").

- "[I]ncluding a water-soluble ***binder improves the granule strength*** of pesticide granules of the present invention without undermining disintegration and dispersibility in water." Appx855 (JP '902, [0011] (emphasis added)).

To evaluate a purported motivation to combine, all the teachings of the prior art, including those bulleted above, must be considered. *Arctic Cat*, 876 F.3d at 1363. Neither Tide nor the Board adequately "grapple with why a skilled artisan would find it obvious" to arrive at the granule of claim 1, which excludes a binding agent, when the very prior art at issue teaches otherwise. *Chemours Co. FC, LLC v. Daikin Indus., Ltd.*, 4 F.4th 1370, 1376 (Fed. Cir. 2021).

Disregarding black-letter patent law, Tide even goes as far as to argue that there is no requirement to show a motivation to prepare a granule without a binding

agent. Red Br., 30 ("Viewing claim 1 through this lens, and given UPL has not suggested the '685 patent disclosure does not adequately enable claim 1, all of UPL's arguments that a POSITA would not be motivated to make a binder-free granule go out the window. ***No such motivation is even required for claim 1***."). That is a remarkable admission at this stage of the proceedings—and consistent with Tide's arguments below, where it repeatedly failed to articulate any rationale for not including a binding agent in an acephate granule. *E.g.*, Appx95-97 (explaining that the prior art would have motivated a POSITA to prepare a granule with a binding agent). But this Court's precedent requires some motivation or rationale to find patent claims obvious, and the record establishes that it is absent here. Blue Br., 40-47.

### B. Tide's Attempt to Reframe the Issue as Motivation "to Use a Filler" Should Be Rejected.

The question on appeal is whether the prior art would have motivated a POSITA to prepare a granule containing 85-98% acephate ***without a binder***, not whether a POSITA would have been motivated to include a filler. Blue Br., 40-47. Tide's argument regarding the purported motivation of a POSITA to include "fillers to make 100%" is thus irrelevant. *See, e.g.*, Red Br., 23-24; *see also* Red Br., 17 (arguing that a POSITA "would know how to use 'fillers to make 100%.").

Moreover, Tide's position that UPL NA has "introduced" on appeal the argument that Tide failed to show that a POSITA would have been motivated to

"replace" Misselbrook's preferred binding agents with non-binding fillers is baseless. Red Br., 23-24. While UPL NA may not have used the actual word "replace" (*see* Red Br., 24), UPL NA presented this very argument at the Board, e.g.:

> Tide's Petition makes clear that a POSA would have considered the binding agents of Misselbrook (e.g., lactose, glucose, and sucrose) desirable. Petition, 33-34, 49-50, 60-61 [Appx95-95, Appx110-111, Appx122-123] (arguing the prior art would have motivated a POSA to include a binding agent in a granule). In its Reply, Tide seeks to shift the focus to Misselbrook's disclosure of a purportedly "well-known genus of fillers." Reply, 2 [Appx338]. Yet ***Tide makes no attempt to explain why a POSA would select a non-binding member of this genus of fillers over the specific binding agents that Misselbrook repeatedly and consistently highlights as a key feature of its granules***.

Appx372 (emphasis added); *see also* Appx378 (arguing Tide "has not shown that a POSA would have disregarded Misselbrook's preferred fillers/binding agents in favor of an undisclosed (and allegedly non-binding) filler."); Appx379 ("Tide also notes that CN '588 and JP '902 disclose fillers that are not binding agents. Tide has not explained *why* a POSA would select these fillers based on the combined teachings of Misselbrook, CN '588, and JP '902." (emphasis in original)); Appx273 ("[N]either CN '588 nor JP '902 provide any scientific reason to *remove* Misselbrook's water-soluble binding agent."); *see also* Appx456 (Oral Hr'g Tr. 36:19-26); Appx482 (Oral Hr'g Tr. 62:16-26).

Again, the issue is whether a POSITA would have been motivated to prepare a granule containing 85-98% acephate ***without a binding agent***, not whether a

POSITA could have included (non-binding) fillers to make 100%. Tide's attempt to mislead this Court, just as it misled the Board, should be rejected.

### C. Tide Forfeited Its Untimely and Irrelevant Arguments Based on the '685 Patent's Disclosures

For the first time on appeal, Tide seeks to rely on the disclosures in the '685 patent to bolster a POSITA's reasonable expectation of success. Red Br., 24-30. This argument should be disregarded. It is untimely, irrelevant to the issues on appeal, and mischaracterizes the '685 patent.

First, Tide never before sought to rely on the disclosures of the '685 patent to bolster its obviousness arguments. Appx56-139 (Petition); Appx331-365 (Corrected Reply). As such, Tide forfeited this argument. *In re Google Tech. Holdings*, 980 F.3d 858, 863 (Fed. Cir. 2020) (noting that failure to raise an argument below may compel a finding of forfeiture).

Next, Tide's argument is irrelevant. In an effort to narrow the issues for appeal, UPL NA's opening brief focuses solely on the Board's analysis of the motivation to combine (and its related improper construction of the term "fillers")—not reasonable expectation of success. Tide conflates these distinct issues by attempting to bolster an aspect of the Board's analysis that UPL NA did not even present in its appeal.

Tide's new argument is also misguided. While the embodiments of the '685 patent may include a binding agent, such examples are merely illustrative and do not

undermine the alternative disclosures of the ’685 patent and its priority applications. In short, Tide’s new argument that the disclosures of the ’685 patent cure the deficiencies in the prior art should be rejected, if it is considered at all.[1]

## III. The Claimed “Fillers” Should Not Include Unrecited “Binding Agents”

The ’685 patent claims two distinct granules containing 85-98% acephate, an inventive embodiment without a binding agent (claim 1) and one with a binding agent (claim 7). Appx52. Tide misled the Board into determining that the claimed “fillers” encompass “a binding agent.” This argument can neither be squared with the presumption that different claim terms have different meanings nor the public notice function of the claims. Indeed, Tide’s arguments (as adopted by the Board) would turn the term “fillers” into a catchall term to capture all unrecited excipients, rendering the “consisting of” language of the claims meaningless.

Rather than address the language of the claims, Tide baselessly argues that UPL NA waived its argument that claim 1 excludes binding agents, notwithstanding

[1] Tide’s argument that the claims of the ’685 patent do not “require” a dust-free granule is also inapposite. *See* Red Br., 29-30. Tide argued to the Board that a POSITA would have been motivated to prepare granular forms of acephate specifically ***because granules are dust-free*** (e.g., Appx81; Appx95; Appx96-97; Appx103; Appx111), and the prior art teaches that a binding agent is required to achieve that benefit (Appx1286-1287; Appx1292). As such, while the claims do not require a “dust-free” granule, Tide’s reliance on the “dust-free” nature of granules places that benefit (and the associated requirement for a binding agent) at the heart of this appeal. Blue Br., 43-45.

the fact that UPL NA presented this as its primary argument against all three grounds in the Petition. Next, Tide argues that the Board did not construe fillers, yet the Board's provided its understanding of the purported "plain meaning" of the term "fillers to make 100%." Finally, Tide seeks to distract by focusing on the meaning of "inert," instead of the claim term "fillers." But regardless of what "inert" means, the "fillers" of the '685 patent should not be read to encompass the excipients specifically excluded from claim 1 and recited in claim 7 (e.g., a binding agent).

### A. UPL NA Consistently Argued that the Claimed "Fillers" Are Not Binding Agents, Precluding a Finding of Forfeiture

Tide argues that UPL NA forfeited its argument that the claimed "fillers" do not include binding agents because, according to Tide, UPL NA did not raise this argument before the Board. Red Br., 31-32.

Contrary to Tide, UPL NA consistently and repeatedly argued that the "consisting of" language in claim 1 excludes unrecited ingredients, e.g., binding agents. Appx267 ("[T]he term 'consisting of' indicates that the claims of the '685 patent are closed and do not contain additional, unrecited ingredients."). For example, UPL NA explained:

> Claim 1 does not recite a "binding agent." The "consisting of" language in claim 1 means that ingredients and amounts that are not specifically recited in claim 1 are excluded from the claimed granule. In other words, claim 1 recites a granule that does not include any amount of a binding agent.

Appx269.

Applying the "consisting of" language of claim 1, UPL NA explained that the prior art of record would have provided a strong motivation to include a binding agent in a granule, and no motivation to exclude a binding agent to arrive at the granule of claim 1. *E.g.*, Appx269-274; Appx378-382. This argument is based on the premise that the term "fillers" is not an umbrella term that permits adding unrecited, functional excipients to the "consisting of" granule of claim 1. UPL NA has not changed its position on the meaning of the claims, rendering forfeiture inappropriate.[2] *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1251 (Fed. Cir. 2005) ("The next question is whether the change in Ericsson's argument is so insubstantial that it represents 'the same concept' that Ericsson raised before the district court, in which case there would be no waiver.").

The inappropriateness of Tide's arguments on waiver and forfeiture is further evidenced by the unpublished disposition it cites for support, *Verify Smart Corp. v. Askeladden, L.L.C.*, 824 F. App'x 1015, 1020 (Fed. Cir. 2020). *See* Red Br., 31. In *Verify*, a party was precluded from advancing a claim construction argument for the first time on appeal. 824 F. App'x at 1020. But here, UPL NA's position was clear from the outset, and notably, addressed by the Board. Appx29 ("[W]e are not

---

[2] In addition to arguing forfeiture (Red Br., 31-32), Tide also refers to waiver. Red Br., 42. As this Court recently explained, while these terms are at times used interchangeably, the doctrine of forfeiture (not waiver) applies if an argument is not timely raised (which is not the case here). *In re Google*, 980 F.3d at 862-63.

convinced that the premise for Patent Owner's argument—that the 'consisting of' language in claim 1 excludes Misselbrook's use of lactose as a filler—is correct.").

In short, UPL NA has consistently maintained that claim 1 does not include a binding agent and that Tide's attempts to shoehorn the binding agents of the prior art into the claimed "fillers" is improper. Appx268-274; Appx378-382. These arguments have not been waived or forfeited. *See Carrum Techs., LLC v. Unified Patents, LLC*, 2020-2204, 2021 WL 3574209, *5 (Fed. Cir. 2021) (non-precedential) (finding that a patent owner did not waive or forfeit a claim construction argument that it argued in the obviousness section of its Patent Owner Response).

### B. The Board Applied a Flawed Construction of "Fillers" in Its Final Written Decision

The Board's Final Written Decision included two alternative findings: (1) a POSITA would have been motivated to prepare an acephate granule without a binding agent (*see supra*, Section II), and (2) an ingredient added "to make 100%" is a filler in the context of the '685 patent, regardless of whether it is a binding agent. Appx29-30. This latter finding was premised on a flawed interpretation of the claimed "fillers." Blue Br., 36-40.

Tide argues that the Board did not construe the term "fillers." Red Br., 32. Not true. The Board plainly stated that if known, common binding agents such as lactose are "used to normalize the concentration of the active ingredient by adding an amount to . . . make 100%," that "would seem to meet ***the plain meaning of fillers***

***to make 100%***." Appx29 (emphasis added); Red Br., 33. The Board thus interpreted "fillers" to mean anything—including binding agents—that are added to make 100%. This construction renders the "consisting of" language meaningless, as the term "fillers" could potentially include any number of unrecited ingredients comprising the balance of a granular formulation (e.g., anything not recited in claim 1). *See* Blue Br., 36-37. Whether implicit or explicit, this construction warrants correction similar to this Court's approach in *Carrum*, 2020-2204, 2021 WL 3574209, *5 (unpublished).

In *Carrum*, the patentee argued that the petitioner failed to establish obviousness, and in doing so, it provided its position on the proper interpretation of the claims. *Id.* The petitioner characterized the patent owner's non-obviousness position as an attempt to "implicitly construe" a claim term and provided its responsive position. *Id.* The Board sided with the petitioner, and on appeal, the panel determined that the Board "implicitly adopted a construction of the phrase at issue that is inconsistent with the phrase's plain and ordinary meaning when read in light of the specification." *Id.* The panel ultimately reversed the Board's determination of obviousness because it was based on an incorrect, implicit construction of a key claim term. *Id.*, *6-7. This is precisely the relief UPL NA seeks here. The Board's implicit interpretation of "fillers" to include "binding agents" led to its erroneous conclusion that the prior art rendered claim 1 of the '685 patent obvious.

### C. Regardless of the Meaning of "Inert," "Fillers" Are Not "Binding Agents" in the Context of the '685 Patent.

Tide's arguments regarding the term "inert" are misplaced. Red Br., 35-38. Regardless of how the term "inert" may be used outside the context of the '685 patent, the claimed "fillers" are not a catch-all to encompass excipients specifically excluded from claim 1. Claim 1 recites a granule "consisting of" acephate, adjuvants, and fillers ***without a binding agent***, while claim 7 recites a granule "consisting of" the same ingredients ***plus a binding agent*** and a disintegrating agent:

| Independent Claim 1 | Independent Claim 7 |
| --- | --- |
| 1. A chemically stable dry flow, low compact, dust free soluble phosphoramidothioate granule ***consisting of***<br><br>(i) 85-98% w/w [acephate];<br><br>(ii) 0.1-5.0% w/w a dispersing agent;<br><br>(iii) 0.1-3% w/w a wetting agent;<br><br>(iv) 0.01-0.08% w/w an antifoaming agent;<br><br>(v) 0.01-1% w/w a stabilizer and<br><br>***(vi) fillers to make 100%,***<br><br>wherein said granule has a length of 1.5-3.0 mm and a diameter of 0.5-1.5 mm. | 7. A chemically stable dry flow, low compact, dust free soluble phosphoramidothioate granule ***consisting of***<br><br>(i) 85-98% w/w [acephate];<br><br>(ii) 0.1-5.0% w/w a dispersing agent;<br><br>(iii) 0.1-3% w/w a wetting agent;<br><br>(iv) ***0.1-3% w/w a binding agent;***<br><br>(v) 0.01-0.08% w/w an antifoaming agent;<br><br>(vi) 0.01-10% w/w a disintegrating agent;<br><br>(vii) 0.01-1% w/w a stabilizer and<br><br>(viii) ***fillers to make 100%,***<br><br>wherein said granule has a length of 1.5-3.0 mm and a diameter of 0.5-1.5 mm. |

The term "fillers" presumptively has a different meaning than the separately claimed "binding agent." *Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1369 (Fed. Cir. 2012) ("The general presumption that different terms have different meanings remains.") (citation omitted).

Apart from "fillers," the recited excipients of the '685 patent serve specific functions: the claimed wetting agent promotes wetting (i.e., it "reduces the interfacial tension between the liquid and the surface on which it is spreading"); the dispersing agent "assists with dispersion"; the antifoaming agent "reduces or prevents the formation of foam"; the stabilizer "promotes physical [or] chemical stability"; the binding agent (of claim 7) "assists in the binding of particles together in a formulation"; and the disintegrating agent "enables a liquid to penetrate the pores of a granule to allow for dissolution of that particle." Appx9-10. As such, a POSITA would have understood that the claimed "fillers" serve "to make 100%," and not, e.g., to promote wetting, dispersion, binding, or disintegration. In other words, the claimed fillers are non-functional.[3] Blue Br., 36-39.

---

[3] Tide takes issue with UPL NA's use of the phrase "functional excipients" (Red Br., 35), but that term simply serves as a shorthand for the "specified adjuvants" of the '685 patent, which have a specific, required function, e.g., wetting, dispersing, preventing or reducing foam, and stabilizing. Appx49 (2:50-51). While the patent does not use the words "functional excipients," the concept is readily apparent: the claimed adjuvants have a required function, while fillers serve to "make 100%."

Tide urges this Court to disregard the binding nature of Misselbrook's preferred so-called fillers (lactose, glucose, and sucrose), noting that "ingredients sometimes wear more than one hat." Red Br., 33. But as Dr. Rockstraw explained, "***in the context of the '685 patent***, it's expected that ***a separate excipient***" will serve the role of each component identified in the claims.[4] Appx1441 (Rockstraw Dep. Tr. 31:11-14) (emphasis added). Tide's counsel agreed at the Oral Hearing, explaining that "a single ingredient cannot function as both" a filler and a binding agent:

> JUDGE VALEK: Counsel, can a single ingredient function as both a filler and a binding agent?
>
> MS. BENEDICT: According to, let me check this. I believe that there is some testimony from Dr. Rockstraw in his deposition that it cannot. ***A single ingredient cannot function as both***.

Appx435-436 (Oral Hr'g Tr. 15:24-16:3) (emphasis added).

Tide now attempts to change the meaning of this exchange, arguing that it should be read in combination with counsel's argument that sugars, starches, and

---

[4] Tide notes that "Dr. Rockstraw did not dispute the concept, in general, that certain ingredients can serve more than one function." Red Br., 15. Dr. Rockstraw's agreement that in general (outside the context of the '685 patent), an ingredient can serve more than one function is irrelevant in view of his testimony regarding the expectation that each excipient serves a different function in the context of the '685 patent. Tide further notes that Dr. Rockstraw agreed that "if a granule has acceptable properties without a binder, it means there is no need to use a binder" (Red Br., 15), yet Tide has not argued (much less shown) that any prior art granule had "acceptable dry properties without including a binder," so it is unclear why Tide believes this testimony supports its position.

starch blends may not "necessarily" function as binding agents.[5] Red Br., 35. But Tide's attempt to now walk back its prior admission conflicts with Tide's own repeated argument that sugars are binding agents ***in acephate granules***. Appx95-96; Appx100; Appx111; Appx115; Appx122; Appx126; Appx773; Appx792; Appx807; Appx1518 (Tide's hearing slides); Blue Br., 25-28. The function of sugars in other formulations is not an issue. What is at issue is the function of sugars in acephate granules. In that context, it is undisputed that they are binding agents. Indeed, sucrose—a sugar—is identified as a preferred binding agent in the '685 patent. Appx50 (3:44-45).

### 1. Tide's Arguments Regarding the Meaning of "Inert" Distract from the Real Issue

Tide seeks to muddy the issue by focusing on the word "inert." Red Br., 35. But as noted above, regardless of the meaning of "inert," the fillers of the '685 patent are not binding agents. *Supra*, 16-19. Moreover, Tide's arguments regarding the meaning of "inert" have no merit.

[5] Tide also mischaracterizes the teachings of Knowles to conjure support for this argument, citing the phrase "binder/dispersant" out of context to argue that the same compound may serve as both. Red Br., 33-34. In context, Knowles discusses the interplay between a binder and (separately) a dispersant and the related effects on granule properties. Appx1281. Tide further notes that a wetting agent can, at times, also serve as a dispersant. Red Br., 34. This is irrelevant and serves only to distract from the issues, e.g., whether the Board erred by equating "binding agents to make 100%" with the claimed "fillers to make 100%." Blue Br., 36-40.

First, Tide cites Mr. Geigle's opinion that ingredients other than the active ingredient are "typically referred to as 'inert ingredients,'" arguing that this testimony is "unrebutted." Red Br., 36. This is not true. Dr. Rockstraw explained that in his experience, the term "filler" is "an inert material that has no function in the performance of your chemical system. If the material offers binding capabilities, I would refer to it as a binder, not a filler." Appx1437 (27:17-21). Tide says that Dr. Rockstraw's testimony indicates that there may be inert materials that ***do*** have functions, but that is a stretch. Red Br., 36 n.9. A more natural reading of Dr. Rockstraw's testimony is that he explained that fillers are inert, meaning they have no function in the performance of a granule. But either way, Dr. Rockstraw's explanation is consistent with the '685 patent and UPL NA's arguments: a filler has no function in the performance of a granule.

Tide next relies on the EPA's use of the term "inert" to encompass functional excipients. Red Br., 36. But the issue here is whether "fillers" can be binding agents in the context of the '685 patent. The EPA's use of the term "inert" in a regulatory context (where the focus is on whether a pesticidal active ingredient should be approved for use) is irrelevant.

Tide also attempts to find support for its position regarding the meaning of "inert" in the '685 patent, but that argument falls flat. *See* Red Br., 37, 40. The patent states that "[a]ll of the inert ingredients are preferably solids and in a powder form,"

then proceeds to list the preferred excipients, without characterizing them all as "inert." Appx50 (3:42-54). Notably, the preferred excipients include silicon oil derivatives, which does not appear to fit the description of a solid in powder form. Appx50 (3:51).

Tide also argues that "Misselbrook itself clearly defines all non-actives, including specifically lactose, as 'inert ingredients.'" Red Br., 37 (quoting Misselbrook, Appx1204: "Nevertheless, the use of lactose or other water-soluble fillers as agricultural inert ingredients is not common in formulating pesticides for crop protection."). This passage is ambiguous at best. Is Misselbrook saying binding agents are "inert," as Tide urges? Or is Misselbrook characterizing lactose as a "filler" because the inventors thought it was an "inert" ingredient (which would explain why Misselbrook did not characterize it as a binding agent)? UPL NA submits that the latter reading is more likely correct.

In the end, Tide's focus on the meaning of "inert" is a red herring. Semantics aside, fillers are not binding agents.

### 2. Tide Mischaracterizes UPL NA's Arguments and the '685 Patent to Dispute that the Claimed "Fillers" Are Non-Functional

Tide contorts UPL NA's positions to create a strawman argument to rebut. Red Br., 38-42. As UPL NA explained in its Blue Brief, the '685 patent identifies and claims fillers separately from the functional excipients. Blue Br., 5, 34, 38. In

other words, the specification repeatedly signals that the claimed "wetting agent," "dispersing agent," "antifoaming agent," "stabilizer," "binding agent," "disintegrating agent," and "fillers" are different ingredients. At no point does the '685 patent put a skilled artisan on notice that "fillers" is a catchall to encompass non-recited ingredients.

In response to this argument, Tide argues that the "written description lists the active ingredient and all adjuvants, including fillers, in a totally consistent manner, with ***no description distinguishing them beyond their names***." Red Br., 39 (emphasis added). Tide appears to have missed the point. The "names" matter. The specification identifies and claims each ingredient as a separate component of the claimed granule. Each component has a different name, and the name signals the function: wetting agents wet, binding agents bind, etc. By contrast, "fillers" are not associated with a function related to the granule's performance. Appx1437 (27:17-21).

This distinction between fillers and the function excipients is reflected in the '685 patent. Blue Br., 37-40. The specification refers to "specified adjuvants," in two places. First, it distinguishes "specified adjuvants" from "other inert ingredients." Appx46 (Abstract). Second, it states: "The specified adjuvants have a maximum of 1% insoluble matter." Appx49 (2:50-51).

Tide argues that the "specified adjuvants" include fillers. Red Br., 41-42 (arguing that "other inert ingredients" is a "catch-all for additional ingredients" drafted at a time when the claims recited "comprising," rather than "consisting of"; that the word "other" distinguishes the "specified adjuvants" from the "other inert ingredients"; and that the limit on 1% insoluble matter pertains to a preferred embodiment). Red Br., 41. But the specification shows the opposite: "[t]he specified adjuvants have a maximum 1% insoluble matter," while the preferred fillers are insoluble and present at levels far above 1% in more than half the patent's examples. Appx51-52 (Examples 4-8); Blue Br., 14.

Turning "fillers" into a catch-all category to add non-recited ingredients to a "consisting of" claim conflicts with the public notice function of the claims. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005) (*en banc*). A competitor that developed a product containing 5% binding agent might expect to avoid infringing claim 7 of the '685 patent (which requires 0.1-3% binding agent) yet be found to infringe claim 1 of the '685 patent (which excludes binding agents). UPL NA submits that "fillers" is not a weasel word that permits Tide and the Board to add unrecited excipients to claim 1. Such an interpretation would eviscerate the "consisting of" language and conflict with the structure of the two independent claims of the '685 patent, which alternately exclude (claim 1) and require (claim 7) a binding agent. *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1297, 1305 (Fed. Cir.

2015) (Newman, J., dissenting from denial of petition for rehearing *en banc*) ("The public notice role of patent claims requires the correct claim construction, not an arbitrarily broad construction of undefined limits.").

## IV. Conclusion

UPL NA respectfully requests that the Court reverse the Board's conclusion that claims 1-4 of the '685 patent were shown to be unpatentable.

Respectfully submitted,

*/s/ Maximilienne Giannelli*

Maximilienne Giannelli
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190-6023
(571) 203-2700

Parmanand K. Sharma
Rajeev Gupta
Joshua L. Goldberg
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Ave., NW
Washington, DC 20001-4413
(202) 408-4000

*Attorneys for Appellant UPL NA, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Federal Circuit Rule 32(b)(1). This brief contains 5¸860, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), as it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Date: September 19, 2022

*/s/ Maximilienne Giannelli*

Maximilienne Giannelli
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190-6023
(571) 203-2700

*Attorney for Appellant UPL NA, Inc.*